# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **KAREN EUBANKS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 5:16-CV-1487-VEH |
| | ) |
| **NANCY A. BERRYHILL, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant**. | ) |

## MEMORANDUM OPINION[1]

**I.  INTRODUCTION**

Plaintiff Karen Eubanks ("Eubanks") brings this action under 42 U.S.C. § 405(g). Eubanks seeks a review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Eubanks filed her application on December 13, 2013. After that, Eubanks pursued

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

and exhausted the administrative remedies available before the Commissioner. Eubanks filed her Complaint in the Northern District of Alabama on September 9, 2016. (Doc. 1). Eubanks filed her brief in support of her position on March 10, 2017. (Doc. 10). The Commissioner responded on March 29, 2017. (Doc. 11). This case is now ripe for judicial review under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).

The Court carefully reviewed the record in this case and **AFFIRMS** the ALJ's decision.

## II. RELEVANT BACKGROUND

The amended alleged onset date is March 27, 2013. (Tr. 42). Eubanks suffers from "migraine headaches, carpal tunnel syndrome, post-traumatic stress disorder (PTSD), anxiety, and depression." (Tr. 29). On December 13, 2013, Eubanks filed an application for Social Security benefits. (Tr. 112, 196-206). The Social Security Administration denied that application. On November 7, 2014, Administrative Law Judge Randall C. Stout held a hearing. (Tr. 40-62). The ALJ issued his decision on February 9, 2015, which was unfavorable to Eubanks. (Tr. 26-35). In that opinion, the ALJ founds that Eubanks "does not have a severe impairment or combination of impairments." (Tr. 29) (emphasis omitted). Eubanks requested the Appeals Council review her claim. (Tr. 1-3). They refused. (Tr. 1-3).

## III. STANDARDS

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.

2d 1143, 1145-46 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## V. FINDING OF THE ADMINISTRATIVE LAW JUDGE

After considering the record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

5

2. The claimant has not engaged in substantial gainful activity since March 27, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following medically determinable impairments: migraine headaches, carpal tunnel syndrome, post-traumatic stress disorder (PTSD), anxiety, and depression (20 CFR 404.1521 *eq seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that has signficantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

5. The claimant has not been under a disability, as defined in the Social Security Act, from March 27, 2013, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

(Tr. 28-35).

## VI. ANALYSIS

### A. Whether Substantial Evidence Supports the ALJ's Decision To Discount the Plaintiff's Testimony and Find That She Is Not Disabled

Eubanks argues that "[t]he ALJ improperly discounted Eubank's testimony of disabling physical limitations and failed to fully and fairly develop the record." (Doc. 10 at 11). Further, Eubanks states that "[t]he ALJ's articulated reasons for rejecting [Eubanks]'s testimony are not supported by substantial evidence." (*Id.* at 11). Eubanks argues that "[t]he ALJ's determination that [Eubanks] does not suffer from

6

any severe impairment demonstrates his disregard for the medical evidence and is simply not supported by substantial evidence." (*Id.* at 5). Specifically, Eubanks takes issue with the ALJ's use of her daily activities. (*See id.* at 5-7). Also, Eubanks argues that the ALJ mistreated the evidence regarding her work on the chicken farm. (*See id.* at 10-11). Finally, Eubanks argues that "[t]he ALJ failed to properly consider [Eubanks's] longitudinal medical record which supports [Eubanks's] testimony." (*Id.* at 7). In particular, Eubanks points to her treatment with Dr. Beeler and to Dr. Haney's opinion. (*See id.* at 7-10).

In response, the Commissioner reminds the Court that Eubanks has "the burden of proving an impairment is severe." (Doc. 11 at 4). She defends the ALJ's decision by arguing that Eubanks was doing fairly normal daily activities while also claiming she was severely impaired. (*See id.* at 5-8). Further, the Commissioner notes a seeming lack of treatment for depression. (*See id.* at 8-11). Finally, the Commissioner defended the ALJ's use of Eubanks's chicken farm work as undercutting her allegations. (*See id.* at 11-12).

   i.  *Eubanks's Level of Daily Activity*

Much of this appeal revolves around the ALJ's consideration of Eubanks's

level of daily activity. (Doc. 10 at 6);³ (Doc. 11 at 7-9).⁴ Daily activity "does not mean the plaintiff is not disabled." *Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1046 (N.D. Ala. 2006). Further, the court in *Horton* noted that:

> "[S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u> .... It is well established that sporadic or transitory activity does not disprove disability."

*Id.* (quoting *Smith v. Califano*, 637 F.2d 968, 971-72 (3rd Cir. 1981)) (emphasis and changes added by the *Horton* court, emphasis changed to underlining by this Court). "It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances." *Id.* However, while "a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability. . . that does not mean it is improper for the ALJ to consider a claimant's daily activities at all." *See*

---

³ Eubanks argued: "The ALJ ignored the limitations testified to by the Plaintiff and did not properly explain how the Plaintiff's activities contradicted her testimony concerning her disabling symptoms and limitations." (Doc. 10 at 6). Eubanks claims that "[t]he ALJ . . . ignored her explanation that she is able to engage in those activities when she 'is able' or is migraine free." (Doc. 10 at 6).

⁴ The Commissioner argued: "[T]he ALJ merely noted that the [sic] level of Plaintiff's allegations and contrasted them with her activity level. This was a proper consideration." (Doc. 11 at 7).

*Hoffman v. Astrue*, 259 F. App'x 213, 219 (11th Cir. 2007).

The ALJ adequately took into account Eubanks's qualifiers. (Tr. 32) ("<u>While the claimant has reported limitations in her level of functioning</u>, she continues to perform a wide range of activities.") (emphasis added); (*Id.* at 31) ("She can cook and clean <u>if she does not have a migraine</u>.") (emphasis added); (*Id.* at 30) (noting the self-reported limitations on the Function Report-Adult in January 2014); (*Id.* at 30-31) ("She reported no problems getting along with authority figures and could handle changes in routine, <u>but indicated she had limitations</u> in her ability to deal with stress.") (emphasis added); (*Id.* at 30) ("She also reports poor concentration, indicating she cannot read or watch television."). Eubanks is correct to note that ALJs should not give a "selective description of the plaintiff's activities." (Doc. 10 at 6) (quoting *Horton*, 469 F. Supp. 2d at 1047). However, ALJs are permitted "to consider a claimant's daily activity." *Hoffman*, 259 F. App'x at 219. On the whole, it appears that the ALJ used the reports of Eubanks's daily activities as a part of his overall credibility analysis. (*See* Tr. 31-32).[5] Importantly, the ALJ noted that "medical

---

[5] The Eleventh Circuit has stated:

In assessing the claimant's credibility about her symptoms and their effects, the ALJ will consider in addition to the objective medical evidence: the individual's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms;

9

evidence has not supported the severity of limitations alleged." (*Id.* at 31). For these reasons, the ALJ's determinations on these matters are supported by substantial evidence.

      ii.      Eubanks's Chicken Farm Work

Regarding the chicken farm work, the ALJ noted the seeming inconsistency between Eubanks's claimed level of disability and her activity. (*See* Tr. 34) ("She also testified that she had migraines twice a week that lasted for two to three days and based on that alone, the claimant would be incapable of performing any work activity, even the work activity she reported and the undersigned finds the claimant is not fully credible in her allegations."). The ALJ concluded that "there would be a significant amount of work to perform." (*Id.* at 34). The Vocational Expert called during the hearing confirmed that a chicken farm laborer and chicken farmer both have medium exertional levels. (*Id.* at 59). Further, a chicken farmer is a highly skilled position. (*Id.*). This Court might not have weighed the chicken farm evidence in the same way that the ALJ did but, on appeal, this Court does not "reweigh the evidence." *Bloodsworth*, 703 F.2d at 1239. For these reasons, the ALJ's determination is

---

    and any other factors concerning functional limitations and restrictions due to the symptoms. *Id.* § 404.1529(c)(3).

*Horowitz v. Commissioner of Social Security*, 688 F. App'x 855, 863 (11th Cir. 2017).

supported by substantial evidence.

### iii. *Longitudinal Medical Record*

Regarding the longitudinal medical record, the Court finds that the ALJ's determinations are supported by substantial evidence. The Court reviewed the Disability Determination from Dr. Haney, Ph.D. (Tr. 88-89). Eubanks urges the Court to understand this report as "support[ing] the presence of [Eubanks's] severe mental impairments." (*See* doc. 10 at 8-9). The Commissioner argues that the ALJ was right to discount "Dr. Haney's opinion" because it was "inconsistent with Dr. Beeler's treatment during the relevant period, including the finding in November 2013 that Plaintiff was doing well with her medications." (*See* doc. 11 at 10).

The Court finds that there is at least substantial evidence to support the ALJ's position. The alleged date of onset of disability is March 27, 2013. (Tr. 42). The medical reports from Dr. Beeler do not seem to indicate the level of severity that Eubanks claims. (*Id.* at 416-17). They do not conclusively point to either the idea that Eubanks is disabled, or that she was a completely healthy female. (*Id.*). On August 22, 2013, the medical report from Dr. Beeler states that "she was tearful, crying. She said that she has been off her antidepressant medication for some time now because she was not able to afford it." (*Id.* at 417). However, on November, 21, 2013, the medical report from Dr. Beeler states that "she is doing well with her pain medication

and anxiety meds." (*Id.*). On February 13, 2014, the medical report from Dr. Beeler does not seem to mention anything about depression at all. (*Id.* at 416).

The Court is not saying that Eubanks has not suffered numerous medical issues throughout her life. She has. (*Id.* at 413-14). However, Eubanks was never seen in specialized mental health treatment, which undercuts her claims. *See O'Neal v. Colvin*, No. 1:13-cv-1772-AKK, 2014 WL 3970167 at *4-5 (N.D. Ala. Aug. 13, 2014) (noting that the claimant "failed to seek out mental health treatment, in contrast to her extensive efforts to seek treatment for other health problems" and that the primary care doctor never referred the claimant to mental health treatment); *see also Horowitz*, 688 F. App'x at 861-62 (noting that a "conservative and routine nature of . . . treatment . . suggests that [claimant's] impairments – while significant – were not so severe that [claimant] could not perform any job duties").

Further, the ALJ was not wrong to discount Dr. Haney's consultive examining opinion. (Tr. 32). The ALJ contrasted Dr. Haney's non-treating, examining opinion with the history of treatment by Dr. Beeler and with Eubanks's own level of activity. (*Id.*). The Code of Federal Regulations states the following:

> (2) Treatment relationship. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the

objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).

Eubanks points out all of the other times that Dr. Beeler treated her for migraines, anxiety, muscle spasms, and depression. (*See* doc. 10 at 7-8). However, it appears that the ALJ considered Eubanks's long treatment history. (Tr. 31) (noting the record from Dr. Beeler going back to 1996); (*Id.* at 32) ("[Dr. Haney's] findings are also inconsistent with the treatment provided by Dr. Beeler over an extended period, with records in November 2013 showing the claimant was doing well with her anxiety medication."); (*Id.*) (noting Dr. Beeler's comments regarding Eubanks's mental health and her positive response to medication); (*Id.* at 33) (noting Dr. Beeler's "extended period" of treatment and using that treatment to discount Eubanks's claims); (*Id.*) ("Review of the medical evidence shows the claimant has been treated for a variety of physical impairments with a long history of treatment for headaches."); (*Id.* at 34) (stating that the ALJ reviewed the whole record). In her brief, Eubanks states that "[t]here is no indication that the Plaintiff's treating physician did not believe her migraines, anxiety and depression were severe." (Doc. 10 at 7). However, "the claimant bears the burden of proving that [she] is disabled," not the Commissioner. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Ultimately, this Court is constrained by the standard of review of an ALJ's factual findings. While the Court might not have come to the same conclusions as the ALJ, the Court finds that the ALJ's decision is supported by substantial evidence.

## VII. Conclusion

In conclusion, the Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

**DONE** and **ORDERED** this 9th day of November, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge